**COMMONWEALTH of Pennsylvania,
Appellant**

v.

**Antonio GRIFFIN, Appellee.**

Superior Court of Pennsylvania.

Argued June 10, 2008.
Filed July 29, 2008.

Anthony V. Pomeranz, Asst. Dist. Atty., for Com., appellant.

Frank M. Spina, Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, P.J., ALLEN and KELLY, JJ.

OPINION BY ALLEN, J.:

¶ 1 The Commonwealth of Pennsylvania appeals from the trial court's order granting the suppression motion of Appellee, Antonio Griffin ("Defendant"). We reverse.

¶ 2 The facts of the case are as follows. Police Officer James Coolen ("Officer Coolen") received a phone call on January 15, 2006 from a first-time, but known informant telling him that a black male named "Anthony", who lived near Hasbrook and Comly Streets in Philadelphia, was dealing large amounts of crack cocaine. He [1] stated that Anthony drove a Nissan pickup with a Pennsylvania license number YRL–6236. The informant also specified that Anthony was on house arrest, but had work leave which allowed him to be out until 9:00 p.m. This leave, he explained, allowed Anthony to take the cocaine to another residence to cook it. Officer Coolen then met in person with the caller whom he registered as a confidential infor-

---

1. The gender of the informant is unclear, but is designated male for the convenience of this opinion.

mant by obtaining a photograph, biographical information, a signed instruction sheet, and a signature card.

¶ 3 Officer Coolen investigated the tip and found that there was a man named Antonio Griffin, who lived at 245 Comly Street, on house arrest. This was one block from the intersection of Hasbrook and Comly Streets. When he arrived at the residence, Officer Coolen observed a Nissan pickup with a license plate number of YRL–6236, the same number the informant mentioned. Because he observed nothing immediately suspicious, Officer Coolen discontinued his investigation at that time.

¶ 4 Eleven days later, Officer Coolen received another call from the same confidential informant. The informant told him that Defendant would be leaving his house shortly to go cook crack cocaine. Officer Coolen then proceeded directly to Defendant's house with other police officers. The call from the informant had come in around 10:00 a.m. and Officer Coolen observed Defendant exit his house around 11:30 a.m. Before entering his truck, Defendant retrieved a baseball sized object wrapped in a black plastic bag from his garage.

¶ 5 Officer Coolen and the other officers followed Defendant to a private gated community. They watched from a distance as Defendant entered a residence and emerged a little over an hour later. Defendant then got into his truck and began driving towards the highway. When Defendant made a turn onto Roosevelt Boulevard, officers activated their lights and pulled him over because they feared losing him in traffic. The officers saw Defendant duck down in his car, and therefore asked him to exit the vehicle. As they neared the vehicle, they observed in plain view a clear plastic bag with crack cocaine that was in the cup holder compartment in the front middle console. The officers acquired search warrants for Defendant's truck and his home, where they found drug paraphernalia and 126 grams of crack cocaine. Defendant was subsequently arrested and charged with possession of a controlled substance, possession with intent to deliver, and possession of drug paraphernalia.

¶ 6 Defendant presented a pre-trial motion to suppress the evidence to the trial court on May 31, 2007. The trial court granted the motion on July 7, 2007, finding that the information given to Officer Coolen was insufficient to give him reasonable suspicion to make the stop. The Commonwealth filed this appeal.

¶ 7 The Commonwealth raises the following issue on appeal:

> Did the lower court err in suppressing both the crack cocaine found in plain view when police stopped defendant's truck and additional evidence seized pursuant to subsequently-obtained search warrants where the Commonwealth's uncontradicted evidence—including multiple, corroborated reports from an identified informant—clearly demonstrated reasonable suspicion and the lower court's suppression order resulted from its use of the wrong legal standards, including its failure to consider all of the Commonwealth's evidence?

Commonwealth's Brief at 2.

¶ 8 The standard of review for suppression is well settled. The appellate court is bound by the findings of fact of the suppression court if they are supported by the record. *Commonwealth v. Russo*, 594 Pa. 119, 934 A.2d 1199, 1203 (2007) (citation omitted). In conducting our review, we may only examine the evidence introduced by appellee along with any evidence introduced by the Commonwealth which remains uncontradicted. *Commonwealth v.*

*Henry,* 943 A.2d 967, 969 (Pa.Super.2008) (citations omitted). However, the suppression court's conclusions of law are not binding on the appellate court. *Commonwealth v. Duncan,* 572 Pa. 438, 817 A.2d 455, 459 (2003).

■ ¶ 9 In order for police to detain someone for investigative purposes, known as making a "Terry-stop", they must have a reasonable suspicion that criminal activity is afoot. *Commonwealth v. Smith,* 575 Pa. 203, 836 A.2d 5 (2003) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "The fundamental inquiry is an objective one, namely, whether "the facts available to the officer at the moment of the [intrusion] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Commonwealth v. Blair,* 860 A.2d 567, 573 (Pa.Super.2004) (citation omitted). This standard is less strict than the probable cause standard, and requires a lesser showing in terms of both content and reliability. *Id.* However, a mere hunch is not enough; the police officer must have an articuable reason to stop the individual. *Id.*

■ ¶ 10 Information provided by informants may supply the police with reasonable suspicion to make a Terry-stop. *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921, 925 (1985) (citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). When determining whether such information is enough to meet the standard, the court should use a "totality of the circumstances test." *Id.* Three factors relevant to the analysis are: the veracity of the informant, the reliability of the information, and the informant's basis of knowledge. *Commonwealth v. Allen,* 555 Pa. 522, 725 A.2d 737, 740 (1999) (citations omitted). Though not strict requirements, these factors help determine how much faith law enforcement can place in the information they are given. *Commonwealth v. Ruey,* 586 Pa. 230, 892 A.2d 802 (2006).

■ ¶ 11 First, the veracity of the informant may be partly assessed by whether the identity of the informant is known to the police or whether the tip is anonymous. *Commonwealth v. Lohr,* 715 A.2d 459 (Pa.Super.1998). An anonymous tip is to be treated with particular suspicion, and may not provide a basis for a Terry stop in situations in which information from a known informant would. *Commonwealth v. Jackson,* 548 Pa. 484, 698 A.2d 571, 573–574 (1997). A person whose identity is known to the police is far less likely to provide false information out of fear of reprisal. *Id.* Our Supreme Court has explained the distinction, saying: "a known informant places himself or herself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk." *Id.*

■ ¶ 12 Second, the Pennsylvania Supreme Court has also provided guidance on assessing the reliability of the information. If an informant is able to provide details about the "future actions not ordinarily easily predicted", then the information is considered to have a higher degree of reliability. *Commonwealth v. Fell,* 901 A.2d 542, 545 (Pa.Super.2006). This ability to predict future events is relevant because "only a small number of people are generally privy to an individual's itinerary, [and] it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." *Id.* at 546 (citations omitted).

¶ 13 Basis of knowledge, the third factor, refers to how the informant obtained the information. *In the Interest of O.A.,* 552 Pa. 666, 717 A.2d 490 (1998). The more intimate the basis of knowledge, the more

likely the information is to be trustworthy. *Id.*

¶ 14 These factors serve as a starting point for our analysis. However, in a totality of the circumstances test, other factors may also be taken into account to form the basis of a Terry stop. *Gray*, 503 A.2d at 925. Innocent facts, when taken together, may combine to give a police officer reasonable suspicion. *Commonwealth v. Rogers*, 578 Pa. 127, 849 A.2d 1185, 1189 (2004). Moreover, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." *Id.*

¶ 15 In this case, we find that the trial court erred by suppressing the evidence against Defendant. Here, the known confidential informant's information, in conjunction with the corroborating events witnessed by Officer Coolen, provided the police with reasonable suspicion that criminal activity was afoot. The stop of the Defendant was thus legal, and, combined with the crack cocaine seen by the officers in plain view, gave the police probable cause for obtaining search warrants.

 ¶ 16 When examining the totality of the circumstances, the confidential informant's information was enough to provide Officer Coolen with reasonable suspicion. Though the informant's basis of knowledge is unknown because of confidentiality purposes, the veracity of the informant and reliability of the information gave Officer Coolen reason to believe that criminal activity was afoot.

¶ 17 The veracity of the informant was strengthened by the individual's willingness to meet Officer Coolen in person and register as a confidential informant. Because the informant was not anonymous, and had provided the police with both biographical information and photographs, Officer Coolen had reason to trust his intentions. Few individuals would risk providing police with their identity and photograph if they were knowingly supplying false information. Moreover, the passage of eleven days between the informant's first contact with Officer Coolen and his predictions on the day of the arrest lends credit to his veracity.

¶ 18 Likewise, corroboration of the information provided gave the informant's statements reliability. Not only were the police officers able to independently verify the defendant's name, address, license number, and type of truck, but they were also able to confirm more predictive and insider information. The informant told officers that Defendant was on house arrest and was allowed out to go to work but had to be back at 9:00 p.m., an example of insider information. N.T., 5/31/07, at 53–54. Most outsiders would not be aware of Defendant's house arrest let alone its express conditions. Officer Coolen verified that Defendant was indeed on house arrest and was allowed to leave for work purposes. *Id.* at 55.

¶ 19 Then, on January 26, 2006, the informant again called and relayed the information that Defendant was about to leave his house shortly to go cook crack cocaine. *Id.* at 19–20. Officers responded to the call and went to stake out Defendant's residence. *Id.* at 20. After about an hour and a half, they observed Defendant get into his truck with a baseball sized object in a black garbage bag and drive off. *Id.* at 23–24. He then drove to another residence, as the informant predicted; he did not drive to a gas station, he did not drive to the grocery store, he did not drive to work. *Id.* at 20–21. He drove to another person's residence. This is not an example of a lucky guess, this is predictive information confirmed by the police. Defendant then entered the residence and remained

inside for about an hour and fifteen minutes; an amount of time consistent with cooking crack cocaine. *Id.* at 26. Thus, by this point, the informant had given insider information regarding Defendant's status on house arrest and its particular conditions, and had accurately predicted that Defendant would leave his house shortly, go to another residence and stay for a period consistent with cooking crack cocaine. This was in addition to providing Defendant's name, location, vehicle description, and license plate number to the police, which officers were able to corroborate.

¶ 20 Defendant argues that this is all information that a neighbor or even a stranger could know. Therefore, he opines, any neighbor with a grudge could call and provide this type of information to initiate a police stop. However, we find it highly improbable that a neighbor would call the police and relate biographical information, as well as the details of house arrest, then show up at the police station and get his photograph and contact information taken and formally become a confidential informant. And, eleven days later, call again with the knowledge that Defendant was soon to leave his house, drive to another home, and stay there long enough to cook cocaine and leave. There was no evidence that Defendant left at that same time to go to someone's home daily or weekly. Only someone with an intimate knowledge of a person's activities would be able to give that type of information. Thus, it is reasonable for the police to assume a person with such accurate and intimate knowledge would also have reliable information about that individual's illegal activities. *Fell, supra.*

¶ 21 Compare these facts with those in *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). In that case, an anonymous caller told police that a woman would be leaving an identified apartment building and driving to a certain motel with drugs in her briefcase. *Id.* at 327, 110 S.Ct. 2412. The police did not verify the actual identity of the woman, nor her specific apartment number. *Id.* They simply followed a woman who left the apartment building and got into the car described by the caller. *Id.* Then the police stopped her before she reached the motel. *Id.* The only confirmed predictive information was that a woman, not a specific woman, any woman, would leave that apartment building and drive towards a motel. Moreover, the most important distinction between *White* and the instant case is that the caller from *White* was anonymous and could have knowingly provided false information without any fear of reprisal. The anonymous caller in *White* therefore had less veracity and less reliability than the informant in the case at hand, and no basis of knowledge. Nonetheless, the United States Supreme Court ruled that under the totality of the circumstances, the information was sufficient to give the police reasonable suspicion to stop the car. *Id.* at 332, 110 S.Ct. 2412.

¶ 22 Defendant and the trial court rely on inapposite cases to support suppressing the evidence. In *Commonwealth v. Goodwin,* 561 Pa. 346, 750 A.2d 795 (2000), an anonymous caller gave police a description of a woman who allegedly sold marijuana, and told the police to find her at her car at the beginning of her lunch break. Evidence showed the woman ate lunch at 12:15 every day, thus the information was found not to be predictive. *Id.* at 799. This Court ruled an anonymous tip with no predictive information was not enough to provide the police with reasonable suspicion to make the stop. *Id.* at 800. Moreover, *Goodwin* was a plurality decision, and is therefore not precedential. *Commonwealth v. Arroyo,* 555 Pa. 125, 723 A.2d 162 (1999).

¶ 23 Another non-binding plurality decision cited by Defendant and the trial court was *In the Interest of O.A.,* 552 Pa. 666, 717 A.2d 490 (1998). In that case, the caller was known to the police, however again he provided no predictive information. *Id.* at 498. The only information the police had was a single call telling them the general physical description of the appellant and his current location. *Id.* at 493. Additionally, the analysis in that case was based on the higher standard of probable cause, not reasonable suspicion. *Id.* at 492.

¶ 24 *Commonwealth v. Wimbush,* 561 Pa. 368, 750 A.2d 807 (2000), and its companion case likewise dealt with situations in which the police were provided with no predictive information. The court in those cases also indicated that the fact that the tip was from an unreliable anonymous source was a major factor in suppressing the evidence. *Id.* at 811–813. The trial court and Defendant thus ignore the important difference between a known confidential informant and an anonymous tip. *Jackson, supra.* They do not cite any cases in which the police needed reasonable suspicion based on an identified confidential informant giving insider and predictive information confirmed by the police.

¶ 25 Furthermore, both Defendant and the trial court incorrectly used the older, more stringent three-prong test of veracity, reliability, and basis of knowledge in their analyses. While those factors are relevant, the proper test is the totality of the circumstances. *Gray, supra.* Neither party mentions this test, nor takes into account the weight accorded to the officer's experience and the impressions created by the combined facts of the case; only the suspicion aroused by each fact taken in isolation. The whole is greater than the sum of its parts however, and the facts of this case, when taken cumulatively, warrant a finding of reasonable suspicion. *Rogers, supra.*

¶ 26 Therefore, given the totality of the circumstances of the instant case, the confidential informant provided Officer Coolen with an articulable reason to investigate the Defendant, which after the officer's corroborating observations, led to reasonable suspicion for the stop. Officer Coolen's reasonable suspicion combined with the cocaine in plain view culminated in probable cause for the subsequent search of Defendant's home and vehicle. The evidence found therein is thus admissible.

¶ 27 Vacated and remanded. Jurisdiction relinquished.