J-S54010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVON L. SMITH, | |
| Appellant | No. 1388 WDA 2015 |

Appeal from the Judgment of Sentence Entered July 24, 2015
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0002611-2013

BEFORE:  BENDER, P.J.E., OTT, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED SEPTEMBER 09, 2016**

Appellant, Davon L. Smith, appeals from the judgment of sentence of 5½ to 11 years' incarceration, imposed after he was convicted of two violations of the Uniform Firearms Act, 18 Pa.C.S. §§ 6101-6127.  Appellant solely challenges the trial court's denial of his pretrial motion to suppress the gun found in his possession after he was stopped and frisked by police. After careful review, we affirm.

In November of 2013, Appellant was arrested and charged with possession of a firearm by a person prohibited, 18 Pa.C.S. § 6105(a)(1), and carrying a firearm without a license, 18 Pa.C.S. § 6106(a)(1).  Prior to his trial, Appellant filed a motion to suppress the gun recovered by police after they stopped and frisked him.  A suppression hearing was conducted on October 14, 2014, after which the court denied Appellant's motion and his

case proceeded to a jury trial. On May 1, 2015, the jury convicted Appellant of both firearm offenses. On July 24, 2015, he was sentenced to the term of imprisonment stated above.

Appellant filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, he presents one question for our review:

> 1. Whether the [t]rial [c]ourt erred by denying Appellant's [m]otion to [s]uppress where the evidence tended to show that the testimony of Patrolman Miksich was not credible in relation to the [c]ourt's justification for the Terry [s]top, namely that the patrolman had seen a gun[?]

Appellant's Brief at 4.

> It is well-settled that,

> [o]ur standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783–84 (Pa. Super. 2012) (quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361–62 (Pa. Super. 2012) (citation omitted)).

Before addressing Appellant's argument, we set forth the suppression court's summary of the evidence presented at the suppression hearing, as follows:

> On November 23, 2013, at 3:00 a.m., Officer Stephen Miksich and Officer Vasil were dispatched to the 25th Street and 4th Avenue area of Altoona regarding a complaint of four white males attempting to break into vehicles. Officer Miksich was familiar with this area as he had responded to crimes of violence in that area several times. The officers patrolled 20th Street and 4th Avenue looking for anyone on foot after the caller reported that he had chased the suspect[s] to that area. Officer Miksich approached a person in the area who had a hood up; this person was later recognized to be [Appellant]….[1] [Appellant] is a black male.
>
> Officer Miksich attempted to engage [Appellant] in conversation based on their "good rapport."[2] [Appellant] put his head down and placed his hand into his right pocket and walked away;[3] when [Appellant] removed his hand from his pocket, Officer Miksich observed the butt of a handgun from his position approximately five feet away. Officer Miksich was aware

---

[1] Officer Miksich testified that he previously knew Appellant, who went by the nickname, "Flip," and that "normally [Appellant would] stop and talk to both [Officer Vasil] and [Officer Miksich] anytime [they saw] him…." N.T. Hearing, 10/14/14, at 6. Officer Miksich stated that the officers had "a pretty good rapport with [Appellant]." *Id.*

[2] Specifically, Officer Miksich testified that when he exited the police vehicle, he said to Appellant, "hey, Flip, what's going on?" N.T. Hearing at 6.

[3] At that point, Officer Miksich stated, "Flip, what are you doing?" N.T. Hearing at 6. Appellant then removed his hand from his pocket. *Id.*

of [Appellant's] criminal history which prohibited [Appellant] from possessing a firearm.

The officers detained [Appellant by grasping his hands] …, conducted a pat-down search, and retrieved a loaded Smith and Wesson 380 handgun.

Suppression Court Opinion (SCO), 12/1/14, at 1-2 (citations to the record omitted).

Based on this evidence, the suppression court first concluded that "the officers' contact with [Appellant] began as a voluntary encounter and evolved to a ***Terry***[4] stop and frisk based on the attendant facts." ***Id.*** at 3. In explaining its determination that the interaction began as a mere encounter, the court noted the following facts:

Officer Miksich testified that both officers had a "pretty good rapport" with [Appellant] and [Appellant] would voluntarily speak to them anytime [Appellant] saw them. Based on the totality of the circumstances, including [Appellant's] prior cooperation with the officers, neither the officers' approach in a marked unit nor Officer Miksich's questions to [Appellant] of "what's going on?" and "what are you doing?" had escalated the contact to that of a ***Terry*** stop.

***Id.*** at 3-4 (citations to the record omitted).

The court did not go on to expressly state at what point the encounter became a '***Terry*** stop,' *i.e.*, a detention "for investigative purposes" that must be supported by "a reasonable suspicion that criminal activity is afoot." ***Commonwealth v. Griffin***, 954 A.2d 648, 651 (Pa. Super. 2008) (citation omitted). However, we conclude that Appellant was detained when the

---

[4] ***Terry v. Ohio***, 392 U.S. 1 (1968).

officers grasped his hands after Officer Miksich observed the weapon in Appellant's pocket. ***See*** N.T. Hearing at 6-7 (Officer Miksich's testifying that after he believed he saw "the butt of a firearm or a handgun," he "told [Officer] Vasil that [he] believe[d] … [they] were able to detain [Appellant's] hands, and at that time [Officer Miksich] retrieved … a black Smith and Wesson handgun"). Clearly, the officers' grabbing Appellant's hands "carrie[d] an official compulsion to stop and respond," thus constituting an investigative detention. ***Commonwealth v. DeHart***, 745 A.2d 633, 636 (Pa. Super. 2000).

In regard to whether the officers had reasonable suspicion to justify the ***Terry*** stop of Appellant, the suppression court first acknowledged that Appellant's "act of walking away from Officer Miksich with his hand in his right jacket pocket by itself cannot demonstrate that criminal activity was afoot." SCO at 4 (citing ***Commonwealth v. Reppert***, 814 A.2d 1196, 1206 (Pa. Super. 2002) ("A police officer's observation of a citizen's nervous demeanor and furtive movements, without more, establishes nothing more than a 'hunch,' employing speculation about the citizen's motive in the place of fact.")). However, the court went on to conclude that,

> Officer Miksich possessed reasonable suspicion of criminal activity after he observed a handgun in [Appellant's] pocket and knew that [Appellant] was prohibited from possessing a firearm. Although Officer Miksich's report is inadequate in failing to note the observation of a gun, the [c]ourt finds his testimony credible. Therefore, Officer Miksich's observation[,] combined with the knowledge that [Appellant's] prior criminal convictions prohibited him from possessing a firearm[,] provided the requisite level of suspicion to justify the ***Terry*** stop.

*Id.* at 4 (citations to the record omitted).

On appeal, Appellant initially presents a rather confusing challenge to the court's determination that his interaction with the officers only escalated into an investigative detention *after* Officer Miksich observed the gun in Appellant's pocket. Essentially, Appellant relies on his own testimony at the suppression hearing to assert that the officers were in the midst of patting him down before the gun was visible and, thus, their **Terry** stop was not supported by reasonable suspicion. **See** Appellant's Brief at 16-17; **see also** N.T. Hearing at 19-21 (Appellant's testifying about how the stop and frisk occurred). Additionally, Appellant argues that the suppression court should have wholly disbelieved Officer Miksich's testimony that he observed a gun in Appellant's pocket because the officer failed to mention this fact in his Incident Report.

Both of Appellant's arguments ask this Court to overturn credibility determinations by the suppression court, which we cannot do. Clearly, the court heard Officer Miksich's version of the incident, as well as Appellant's differing account, and chose to believe Officer Miksich. The court was also well aware that Officer Miksich did not include, in his Incident Report, the fact that he observed a gun in Appellant's pocket. Indeed, *the court* asked the officer why he omitted that fact, and the officer replied, "I don't have an answer for that." N.T. Hearing at 16. It is apparent from the record that the suppression court considered Officer Miksich's failure in this regard, yet nevertheless chose to credit his testimony regarding the encounter with

Appellant, including that the officer observed a gun prior to detaining Appellant.  It was within the sole province of the court to make these credibility determinations.  ***See Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003) ("It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.")  (citation omitted).  Based on Officer Miksich's testimony, we ascertain no legal error in the suppression court's conclusion that the officer possessed reasonable suspicion to conduct a ***Terry*** stop and frisk of Appellant.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/9/2016

- 7 -