J-A08011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KENNITH C. MONROE | |
| | No. 712 EDA 2016 |

Appeal from the Order Entered February 12, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010262-2015

BEFORE:  PANELLA, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, J.                    **FILED JULY 18, 2017**

The Commonwealth of Pennsylvania appeals[1] from the order entered on February 12, 2016, in the Court of Common Pleas of Philadelphia County. The order granted Appellee Kennith[2] C. Monroe's pretrial motion to suppress evidence. We reverse and remand for further proceedings.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] This appeal is permissible as of right because the Commonwealth has certified in good faith that the suppression order submitted for our review substantially handicaps the prosecution and the appeal is not intended for delay purposes. **See** Pa.R.A.P. 311(d).

[2] There appears to be some discrepancy in the record concerning the correct spelling of Appellee's first name. We have adopted the spelling that appears on Appellant's Notice of Appeal and in Appellee's Brief. **See** Notice of Appeal, 3/10/16; Appellee's Brief, 12/19/16.

The relevant facts and procedural history are as follows. On June 8, 2015, Monroe was arrested and charged with possession of a firearm without a license and carrying a firearm on the streets of Philadelphia.[3] Monroe filed a motion to suppress. The trial court held a suppression hearing.

At the hearing, the Commonwealth presented the testimony of Police Officer Timothy Gibson. Officer Gibson testified that on the evening of June 8, 2015, he and his partner, Officer Loesch, were on patrol in a marked police vehicle in the area of 1900 North Broad Street in Philadelphia. **See** N.T., Suppression Hearing, 2/2/16, at 7-8.[4] At approximately 10:50 p.m., Officer Gibson observed a male, driving a purple Vespa scooter southbound on North Broad Street, disregard a red light at the intersection of North Broad street and Norris street. **See id**., at 8. The driver, later identified as Monroe, continued southbound and drove through another red light at the intersection of North Broad Street and Paulette Walk. **See id**. The officers activated the police vehicle's siren and external lights and directed Monroe to pull his vehicle to the side of the road. **See id**. Monroe complied, disembarked, and stood beside the Vespa. **See id**.

_____

[3] 18 Pa.C.S.A. §§ 6106(A)(1) and 6108, respectively.

[4] While the record reflects that the suppression hearing took place on February 2, 2016, the Notes of Testimony indicates that the suppression hearing took place on February 2, 2015. **See** N.T., 2/2/16. We will to refer to the correct date, February 2, 2016, when citing to this document.

As Officer Gibson approached Monroe, Monroe, without prompting, informed Officer Gibson that "[i]t's my friend's [sic] Mike's bike." *Id*. Further, Officer Gibson noted that Monroe appeared "very nervous," was "swaying back and forth, continuously reaching into his pockets," and was almost "stuttering" as he spoke to the officers. *Id*., at 8-9. Officer Gibson informed Monroe that they had pulled him over for running the red lights and asked Monroe for insurance, registration and his identification. *See id*., at 9, 23. At this point, Monroe calmed down but was unable to find the insurance or registration for the Vespa and did not have identification on his person. *See id*., at 9-11. However, Monroe provided his name for Officer Gibson, who left Monroe with Officer Loesch and ran Monroe's name through the NCIC/PCIC system to check for outstanding warrants. *See id*., at 12.

Officer Gibson did not find any warrants, but returned to Monore to confirm that his identification information was correct. Upon his return, Officer Gibson noted that Monroe "became extremely nervous swaying back and forth again, reaching in both of his pockets, and his right hand kept reaching into his pocket as if he was bringing an object out of his pocket but then pushing it back in." *Id*., at 12, 25-26. Based upon his six years of experience and his knowledge of robberies in the area, Officer Gibson believed that Monroe might be concealing a weapon, feared for his life and the life of his partner, and therefore conducted an open hand frisk for weapons. *See id*., at 12-14, 27.

During the frisk, Officer Gibson felt a bulge in Monroe's front right pocket that he "immediately recognized as possibly being the handle of a firearm." *Id*., at 13. He removed the object from Monroe's pocket—and recovered a .22 caliber handgun. *See id*.

On cross-examination, Officer Gibson disclosed that although his intent in stopping Monroe was to discuss the red light traffic violations or to issue tickets for those violations, he did not ultimately issue a ticket for the red light violations. *See id*., at 17-18. Officer Gibson clarified that because he was still attempting to receive Monroe's identification immediately prior to the frisk, he had never indicated that Monroe was free to leave the interaction. *See id*., at 23-24. Further, Officer Gibson admitted that he never saw any object in Monroe's hand. *See id*., at 26. Overall, the entire interaction between Officer Gibson and Monroe lasted approximately five minutes. *See id*., at 24. Monroe did not testify or present any testimony on his behalf.

Following the hearing, the court granted Monroe's suppression motion, stating that because there was no report of the outline of contraband or criminal activity, Officer Gibson did not have the requisite reasonable suspicion to frisk Monroe for weapons. *See* N.T., 2/12/16, at 6. Further, in its 1925(a) statement, the court clarified that it relied upon the decision in ***Commonwealth v. Reppert***, 814 A.2d 1196 (Pa. Super. 2002) (*en banc*), to conclude that the initial traffic stop had concluded when the frisk occurred, and that Officer Gibson had not shown renewed reasonable

suspicion following the conclusion of the traffic stop to justify the protective frisk. **See** Trial Court Opinion, 5/18/16, at 6-7. This appeal followed.

On appeal, the Commonwealth challenges the suppression court's decision to suppress the evidence obtained from Officer Gibson's search of Appellee. **See** Commonwealth's Brief, at 4. Specifically, the Commonwealth contends Officer Gibson had a reasonable basis for conducting a protective frisk of Monroe, and that the trial court's reliance on **Reppert** is misplaced. **See id**., at 13-14. We agree.

Our scope and standard of review is well settled.

> When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the [Appellee's] witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

**Commonwealth v. Myers**, 118 A.3d 1122, 1125 (Pa. Super. 2015) (citation omitted). Here, the record supports the suppression court's factual findings as set forth at the suppression hearing.[5] Thus, we proceed to review the court's legal conclusions, for which our standard of review is *de novo* and

---

[5] The court did not file a contemporaneous suppression opinion at the time it granted the suppression motion.

our scope of review is plenary. *See Commonwealth v. Wilson*, 101 A.3d 1151, 1153 (Pa. Super. 2014), *appeal denied*, 121 A.3d 496 (Pa. 2015).

Neither side disputes that the Vespa was subject to a valid traffic stop, *i.e.*, investigative detention, due to Monroe's disregard of two red traffic lights. *See* N.T., 2/2/16, at 5; Commonwealth's Brief, at 9-10. Further, the parties agree that the frisk at issue constituted a protective weapons search, or *Terry*[6] frisk. *See* Appellee's Brief, at 2; Commonwealth's Brief, at 9. Therefore, as we explain below, our focus is whether the frisk occurred during the initial traffic stop. And if it did, were "the facts available to the officer at the moment of the [intrusion]" sufficient "to warrant a man of reasonable caution in the belief that the action taken was appropriate." *Commonwealth v. Griffin*, 954 A.2d 648, 651 (Pa. Super. 2008) (citation and internal quotation marks omitted; brackets in original). We will proceed to answer those questions.

The Fourth Amendment of the United States Constitution guarantees, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…." U.S. Const. amend. IV. Similarly, the Pennsylvania Constitution assures citizens of our Commonwealth that "[t]he people shall be secure in their

---

[6] *Terry v. Ohio*, 392 U.S. 1 (1968).

persons, houses, papers and possessions from unreasonable searches and seizures…." Pa. Const. art. I, § 8.

Further, "[t]he reasonableness of a government intrusion varies with the degree of privacy legitimately expected and the nature of the governmental intrusion." *Commonwealth v. Fleet*, 114 A.3d 840, 844 (Pa. Super. 2015) (citation omitted). One such government intrusion that has been recognized as an acceptable interaction between law enforcement and citizens is an investigative detention, otherwise known as a *Terry* stop and frisk.

A *Terry* stop permits an officer to briefly detain a citizen for investigatory purposes if the officer has "reasonable suspicion based upon specific and articulable facts, that criminal activity is afoot." *Commonwealth v. Stevenson*, 894 A.2d 759, 771 (Pa. Super. 2006) (citation omitted). If at any point during this investigatory detention, an "officer believes, based on specific and articulable facts, that the individual is armed and dangerous" the officer may perform a *Terry* frisk. *Id*., at 772 (citation omitted). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Commonwealth v. Simmons*, 17 A.3d 399, 403 (Pa. Super. 2011) (citations omitted). "The fundamental inquiry" in reviewing the officer's decision "is an objective one," utilizing "a totality of the circumstances test." *Griffin*, 954 A.2d at 651 (citations omitted).

In **Reppert**, the case relied upon by the suppression court, an *en banc* panel of this Court set parameters on the length of the investigative detention caused by the initial traffic stop. There, the defendant was a passenger in a vehicle that was lawfully pulled over for expired registration stickers. **See** 814 A.2d at 1199. While the vehicle was pulling over, the arresting officer observed the defendant engaging in movements that suggested that he was secreting an object into the seat cushions. **See id**. The arresting officer interacted with the driver of the vehicle, accepted his explanation, and decided not to issue a citation for the stop. **See id**. At that point, the *en banc* panel determined that the traffic stop had concluded because the officer "had realized the purpose for the stop and had no further reasons to detain the driver of the vehicle or its occupants under the guise of the original traffic infraction." **Id**., at 1203. However, the officer then directed the defendant to exit the vehicle and empty his pockets. **See id**., at 1199. As the traffic stop, *i.e.*, investigative detention, had concluded, the panel held that any subsequent search and seizure required a renewed showing of reasonable suspicion to support an additional detention and frisk. **See id**., at 1206.

Based upon its interpretation of this ruling, the suppression court concluded that Officer Gibson "had realized the purpose for the stop and had no further reasons to detain the driver of the vehicle" once Monroe provided his name, and that therefore any frisk after that point required renewed

reasonable suspicion, which the suppression court did not find. However, the record is devoid of any proof that Officer Gibson had realized the purpose of the stop at the time he frisked Monroe.

Unlike *Reppert*, although Officer Gibson ultimately did not issue citations for the traffic violations, there is no testimony that Officer Gibson had decided not to issue traffic citations at any time prior to the frisk. The officers never informed Monroe that he was free to leave. Further, as Monroe did not have any documentation for himself or the scooter, it is highly unlikely that the officer would have allowed him to leave prior to confirming this information. Thus, we cannot conclude, as the suppression court did, that Officer Gibson realized the purpose of the stop prior to the frisk.

It is clear from the suppression court's comments, which highlighted that Officer Gibson failed to testify regarding any indication that criminal activity was occurring, that the trial court applied the wrong standard to determine whether Officer Gibson had the requisite reasonable suspicion to perform the protective frisk. Therefore, we must analyze whether Officer Gibson had reasonable suspicion to perform a protective frisk under the correct standard—whether the officer held an objectively reasonable belief that the suspect may have been armed and dangerous.

When assessing the reasonableness of an officer's decision to frisk an individual during an investigatory detention, we are not permitted to consider an officer's "unparticularized suspicion or hunch," but rather we

must consider "the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." **Stevenson**, 894 A.2d at 772 (citations and internal quotation marks omitted). Further, "common sense concerns" guide the inquiry and "give preference to the safety of the police officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon." **Id** (emphasis and citation omitted).

Here, the record establishes that Officer Gibson immediately noted that after Monroe disembarked from his Vespa, he was nervous, stuttering, swaying back and forth, and reaching into his pockets. After Officer Gibson asked for his information, Monroe calmed down as he looked for information for the Vespa. However, once Officer Gibson returned from running Monroe's name through the system, Monroe became extremely nervous again, resumed swaying, and began "reaching into his pocket as if he was bringing an object out of his pocket but then pushing it back in." N.T., Suppression Hearing, 2/2/16, at 12, 25-26. Based upon this behavior and Officer Gibson's experience and knowledge of the crime in the area, he believed Monroe to be concealing a weapon. Officer Gibson conducted a frisk, citing fear for the safety of Officer Loesch as well as himself, and recovered a firearm.

Viewing the totality of the circumstances, we find that Officer Gibson's description of Monroe's nervous behavior during the course of a valid traffic

stop, coupled with his furtive movements in reaching, and seemingly pushing an object, into his pocket, justified Officer Gibson's reasonable suspicion that Monroe was armed and dangerous. In fact in **Commonwealth v. Wilson**, a panel of this court found that a similar furtive movements, over a similar span of time, when witnesses within the scope of a lawful traffic stop, provides a reasonable basis for a protective frisk. **See** 927 A.2d 279, 284-285 (Pa. Super. 2007) (finding that extreme nervousness and furtive movements, combined with the fact that defendant placed his hands inside his coat as if reaching for something, sufficient to justify a frisk). **See also Commonwealth v. Simmons**, 17 A.3d 399, 404 (Pa. Super. 2011) (finding passenger's movements in reaching towards the floor and across his chest during a traffic stop sufficient to justify a frisk). Accordingly, we reverse the trial court's suppression order and remand for further proceedings.

Order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2017

- 11 -