J-S29023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TERRANCE L. BROWN | : | |
| | : | |
| Appellant | : | No. 303 MDA 2023 |

Appeal from the Judgment of Sentence Entered August 6, 2021
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0002913-2020

BEFORE:   MURRAY, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:              **FILED SEPTEMBER 15, 2023**

Appellant, Terrance L. Brown, appeals *nunc pro tunc* from the judgment of sentence entered in the Dauphin County Court of Common Pleas, following his jury trial conviction for persons not to possess firearms and his open guilty plea to receiving stolen property, carrying a firearm without a license, resisting arrest, and possession of drug paraphernalia.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows.

> Nicholas Ishman, who has been employed by the Harrisburg City Police Department since 2008 and is part of the Vice Control and Organized Crime Unit, testified that on May 22, 2020, he received information from a confidential informant (hereinafter "CI") regarding Appellant.  Detective Ishman was familiar with Appellant and knew him by the nickname

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105, 3925, 6106, 5104, and 35 P.S. § 780-113(a)(32), respectively.

of "Duke." This particular CI had been providing information since 2012, and Detective Ishman would sometimes speak with the CI multiple times a day. This CI led to the apprehension of several dozen fugitives in the past. On May 22, 202[0], the CI informed Detective Ishman that an individual by the nickname of "Zay," who Detective Ishman knew as Jose Andujar was driving a light gray Toyota 4Runner with the license plate of KRX-4401 and was picking up "Duke" aka … Appellant.

Officer Ishman provided this information to Agent (Allen) Shipley, a state parole agent on the Marshals Fugitive Task Force because he was aware that Appellant had warrants out for his arrest. It was Detective Ishman's understanding that "Zay" was picking "Duke" up during the time he received the tip, so the information was specific to that particular day.

Allen Shipley testified that he is a state parole agent assigned to the U.S. Marshals Task Force. In the course of his duties, Agent Shipley works regularly with Detective Ishman and has worked with him since 2010. The two men regularly share information regarding individuals who have active warrants. Agent Shipley was familiar with Appellant and the fact he was wanted, and several weeks prior to that date, the task force began looking for Appellant.

On May 22, 2020, Agent Shipley received information from Detective Ishman that Appellant was going to be picked up by an individual nicknamed "Zay" driving a gray Toyota 4Runner with the license plate number KRX-4401. Agent Shipley passed this information along to other members of the task force, and personally went to the area it was believed Appellant was staying, on Thomas Street, to see if the vehicle was in that vicinity.

At the time, Agent Shipley was in his uniform and driving an unmarked, civilian type vehicle. Agent Shipley identified the vehicle in question in the parking lot of Choice Cigarette Outlet. … After Agent Shipley followed the car out of the parking lot, he was able to determine that Appellant was not the driver of the vehicle. He was unable to identify the passenger of the vehicle, initially. Harrisburg Detective Ryan Neal used his vehicle to pull in front of the suspect

vehicle, and Agent Shipley pulled directly behind the suspect vehicle, effectively pinning the vehicle between the two police cars. It was then that a passenger in the car, who was suspected to be Appellant bailed out of the passenger seat and threw items in the air, and ran towards another detective and Deputy U.S. Marshal, where a struggle ensued, and the individual resisted arrest. Agent Shipley deployed his taser and the individual was apprehended. Agent Shipley had two state parole agents in his vehicle, and Deputy Mark Golob.

(Trial Court Opinion, filed 4/24/23, at 3-5) (internal record citations omitted).

Appellant filed a suppression motion on February 16, 2021, arguing that officers "did not possess reasonable suspicion or probable cause when they seized [Appellant], as the reliability of the informant had not been confirmed." (Suppression Motion, filed 2/16/21, at 5). The court conducted a suppression hearing on April 2, 2021. At the conclusion of the hearing, the court denied relief. On May 6, 2021, Appellant filed a motion for a bifurcated trial. Specifically, Appellant sought to sever a single count of persons not to possess firearms from the remaining charges contained within the criminal information. The court subsequently granted Appellant's motion to bifurcate.

Appellant proceeded to trial on May 18, 2021. At the conclusion of trial, the jury found Appellant guilty of persons not to possess firearms, and the court deferred sentencing. On August 6, 2021, Appellant entered an open guilty plea to the remaining charges. Immediately thereafter, the court accepted the plea and sentenced Appellant to an aggregate term of eight and one-half (8½) to seventeen (17) years' incarceration. On August 8, 2021, Appellant timely filed a post-sentence motion challenging the discretionary

aspects of his sentence. The court denied the post-sentence motion on August 19, 2021. Appellant did not file a notice of appeal.

On August 10, 2022, Appellant filed a *pro se* petition seeking reinstatement of his appellate rights *nunc pro tunc*. The court reinstated Appellant's direct appeal rights on February 8, 2023. On February 21, 2023, Appellant timely filed a notice of appeal *nunc pro tunc*. On March 8, 2023, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on March 19, 2023.

Appellant now raises one issue for our review:

> Whether the suppression court erred in denying the motion to suppress the evidence seized as violative of unreasonable searches and seizures by law enforcement officials because they did not possess the required reasonable suspicion?

(Appellant's Brief at 3).

Appellant contends that Detective Ishman sent a text message to Agent Shipley notifying him about the information from the CI.[2] Appellant complains

---

[2] Specifically, Appellant's argument references a portion of Agent Shipley's cross-examination from the suppression hearing. At that time, defense counsel questioned Agent Shipley about his report for this case, which Appellant offered into evidence as an exhibit. (*See* N.T. Suppression Hearing, 4/2/21, at 44). The report referenced a text message that Agent Shipley received from Detective Ishman. (*Id.* at 46). The text message included the information that Appellant "was going to be picked up by another individual … by the name of Zay." (*Id.* at 47). Agent Shipley added, "I believe we had phone conversations thereafter, … but what really got our attention was the text message that came through for the specific incident itself." (*Id.*)

that the Commonwealth's case relied upon the information in the text message, but the Commonwealth did not actually produce the text message at the suppression hearing. Appellant maintains that the Commonwealth's failure to produce the text message "puts into serious question that the level of detailed facts possessed by [Agent] Shipley was [able] to reach the threshold of reasonable suspicion." (*Id.* at 14). "While it may have been the case that [Detective] Ishman possessed somewhat more reliable information than [Agent] Shipley," Appellant argues that Agent Shipley did not have a relationship with the CI; therefore, Agent Shipley lacked enough information to conduct an investigative detention. (*Id.* at 15). Under these circumstances, Appellant concludes that this Court must reverse the order denying Appellant's suppression motion.[3] We disagree.

The following principles govern our review of an order denying a motion to suppress:

An appellate court's standard of review in addressing a

_____

[3] In the alternative, Appellant suggests that the suppression court made no findings of fact and conclusions of law. (*See* Appellant's Brief at 20-22). The record belies this claim. The court provided an on-the-record statement of conclusions of law at the end of the suppression hearing. (*See* N.T. Suppression Hearing at 66-67). Regarding findings of fact, the court provided a detailed analysis of the interaction between Appellant and the officers in its Rule 1925(a) opinion. (*See* Trial Court Opinion at 3-5). *See also* *Commonwealth v. Stevenson*, 832 A.2d 1123, 1126 (Pa.Super. 2003) (explaining that Pa.R.Crim.P. 581(I) requires suppression court to enter on record findings of fact and conclusions of law at end of suppression hearing; where suppression court fails to abide by Rule 581(I), however, Superior Court may look at suppression court's Rule 1925(a) opinion to garner findings of fact and conclusions of law).

challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018).

Contacts between the police and citizenry fall within three general classifications:

The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005) (quoting *Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super. 2000)).

An "investigative detention" is interchangeably labeled as a "stop and

frisk" or a "***Terry*** stop."[4]  ***Commonwealth v. Brame***, 239 A.3d 1119

(Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 251 A.3d 771 (2021).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution.  To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot.  Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.
>
> \*    \*    \*
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa.Super. 2005) (internal

citations omitted).

"Information provided by informants may supply the police with

reasonable suspicion to make [an investigative detention]." ***Commonwealth***

***v. Griffin***, 954 A.2d 648, 651 (Pa.Super. 2008), *appeal denied*, 600 Pa. 760,

967 A.2d 958 (2009).

> When determining whether such information is enough to meet the standard, the court should use a totality of the circumstances test.  Three factors relevant to the analysis are: the veracity of the informant, the reliability of the information, and the informant's basis of knowledge.  Though not strict requirements, these factors help

---

[4] ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

determine how much faith law enforcement can place in the information they are given.

First, the veracity of the informant may be partly assessed by whether the identity of the informant is known to the police or whether the tip is anonymous. An anonymous tip is to be treated with particular suspicion, and may not provide a basis for [an investigative detention] in situations in which information from a known informant would. A person whose identity is known to the police is far less likely to provide false information out of fear of reprisal. Our Supreme Court has explained the distinction, saying: a known informant places himself or herself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk.

Second, the Pennsylvania Supreme Court has also provided guidance on assessing the reliability of the information. If an informant is able to provide details about the future actions not ordinarily easily predicted, then the information is considered to have a higher degree of reliability. This ability to predict future events is relevant because only a small number of people are generally privy to an individual's itinerary, [and] it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities.

Basis of knowledge, the third factor, refers to how the informant obtained the information. The more intimate the basis of knowledge, the more likely the information is to be trustworthy.

These factors serve as a starting point for our analysis. However, in a totality of the circumstances test, other factors may also be taken into account to form the basis of [an investigative detention]. Innocent facts, when taken together, may combine to give a police officer reasonable suspicion. Moreover, we must give due weight … to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience.

*Id.* at 651-52 (internal citations and quotation marks omitted).

Instantly, the suppression court made the following conclusions before it denied Appellant's suppression motion:

> I think the Commonwealth has established reliability of the CI. The CI information was not—in some respects was general but in others [was] extremely specific, like the plate number. The general description of the vehicle, 4Runner, you missed that it was gray, and, in fact, it was.
>
> * * *
>
> The fact that [Appellant] was definitely not the driver actually substantiates corroboration of the testimony because [Appellant] was to be picked up, not that he was going to be driving the vehicle. It was that he would be a passenger.
>
> Now, we do not have the corroboration that it was, in fact, [Appellant], but the testimony was that [Appellant] was going to be picked up right now. And that's what, in fact, they found, was that someone was being picked up right now by a gray 4Runner, Toyota, with a plate number as it was, and was substantiated for a period of time. And a decision was made to stop the vehicle to actually find out if, in fact, the final aspect of the stop, was that [Appellant].

(N.T. Suppression Hearing at 66-67). Based on our review of the record, we cannot say that the suppression court erred in reaching these legal conclusions. We also note that Agent Shipley engaged in his own investigation of Appellant, prior to receiving information from Detective Ishman. (**See id.** at 33). From this prior investigation, Agent Shipley already knew that Appellant utilized the 4Runner on a previous occasion, and the 4Runner was one of at least three vehicles linked to Appellant. (**Id.** at 32, 46).

Here, the officers knew about an active warrant for Appellant's arrest. A known, reliable informant subsequently provided police with information

about Appellant's itinerary, which the officers corroborated in part. Under the totality of the circumstances, the officers possessed reasonable suspicion at the time of the investigative detention. ***See Griffin, supra***; ***Jones, supra***. ***See also Commonwealth v. Yong***, 644 Pa. 613, 636, 177 A.3d 876, 889 (2018), *cert.* denied, ___ U.S. ___, 139 S.Ct. 3774, 202 L.Ed.2d 286 (2018) (holding that Pennsylvania adheres to vertical approach of "collective knowledge doctrine," which instructs that officer with requisite level of suspicion may direct another officer to act in his stead). Thus, the suppression court properly denied Appellant's pretrial suppression motion. ***See Ford, supra***. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/15/2023

- 10 -