**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Willie BLAIR, Appellant.**

Superior Court of Pennsylvania.

Submitted April 19, 2004.

Filed Oct. 13, 2004.

William A. Jones, Jr., Pittsburgh, for appellant.

Wayne P. McGrew, Asst. Dist. Atty., Greensburg, for Com., appellee.

Before: JOYCE, ORIE MELVIN, and McCAFFERY, JJ.

McCAFFERY, J.

¶ 1 On the night of August 11, 2002, Officer Michael Krahe was alone on patrol when he was called upon to investigate a report of a domestic dispute. Upon arriving at the location, Officer Krahe saw a car parked directly in front of the address in question. Officer Krahe saw Appellant, Willie Blair, and another individual sitting in the car and acting evasive. In order to reach the door of the residence to investigate the domestic dispute, Officer Krahe would have had to turn his back on the individuals in the car. Concerned for his own safety, Officer Krahe asked Appellant and the other person to show him their hands. They refused and, instead, Appellant opened the car door and started to get out. While Officer Krahe kept repeating his order to remain in the car, Appellant nevertheless kept the door open and threw a bag of cocaine under the car. On appeal, Appellant asks us to determine whether the cocaine should be suppressed as the fruit of an illegal investigative detention. We hold that when the officer ordered Appellant to remain in the car for further investigation, Appellant was legally detained. Therefore, we affirm the order denying Appellant's motion to suppress.

¶ 2 The factual and procedural history,

as set forth in the trial court opinion [1], is as follows.

On August 11, 2002, Patrolman Michael A. Krahe of the Arnold Police Department received a call on his county radio, informing him that a passerby had reported to a 9–1–1 operator that a domestic dispute was occurring at 308 Murray Avenue in Arnold. Patrolman Krahe, alone in his marked patrol car, responded to the call, and drove to the location. The patrolman had been taught that domestic disputes are highly volatile situations, with tensions running high, and the possible involvement of drug and alcohol use. While in route, he considered the fact that officer safety is a high priority in such situations. Furthermore, the officer was familiar with the address of 308 Murray Avenue, because he had responded to numerous complaints in the past about domestic disputes, fighting and illegal drug activity occurring at this address. In other words, the patrolman anticipated a potentially dangerous situation.

Upon arrival at the location, Patrolman Krahe parked his vehicle one house west of 308 Murray Avenue. Parked directly in front of 308 Murray Avenue was a red Pontiac with two males in a slouched position in their seats, as if to hide themselves from the officer's view. Their movements unnerved the patrolman, and because of the location of the car, in relation to the residence at 308 Murray Avenue, he realized that he would not have been able to walk toward the residence without turning his back on the occupants of the car. Consequently, out of a concern for safety, the patrolman

asked the two men to show their hands. They disregarded his request, but the driver, [Appellant] herein, opened the driver's side door and attempted to exit the vehicle. Patrolman Krahe warned him several times to stay in the car. [Appellant] then put his legs outside of the car, and with his hand, threw a baggie with a white substance later determined to be 12.8 grams of crack cocaine, underneath his vehicle. [Appellant] re-entered the car and closed the door. Shortly thereafter, a back-up officer arrived, contraband was seized and the occupants of the vehicle were placed under arrest.

(Trial Court Opinion, 3/14/03, at 1–2) (citations to transcript omitted).

¶ 3 After his arrest, Appellant filed a timely motion to suppress the evidence recovered from underneath the car. On February 25, 2003, Judge McCormick held an evidentiary hearing, and then denied the motion in an order and opinion issued on March 14, 2003. Appellant waived his right to a trial by jury, proceeded to a stipulated non-jury trial, and was found guilty of possession with intent to deliver a controlled substance [2], possession of a controlled substance [3], and possession of drug paraphernalia [4]. On April 10, 2003, Judge McCormick sentenced Appellant to eighteen (18) to thirty-six (36) months in prison. Appellant filed a timely appeal and presents the following issue for our review:

WAS THE POLICE RECOVERY OF THE BAGGIE OF COCAINE IN THIS CASE THE PRODUCT OF AN UNLAWFUL SEIZURE OF THE DEFENDANT?

(Appellant's Brief at 3).

¶ 4 Preliminarily, we note:

---

1. This opinion, dated March 14, 2003, was written in conjunction with Judge McCormick's order denying Appellant's motion to suppress.

2. 35 Pa.C.S.A. § 780–113(a)(30).

3. 35 Pa.C.S.A. § 780–113(a)(16).

4. 35 Pa.C.S.A. § 780–113(a)(32).

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Bomar*, 573 Pa. 426, 445, 826 A.2d 831, 842 (2003) (citations omitted), *cert. denied, Bomar v. Pennsylvania*, 540 U.S. 1115, 124 S.Ct. 1053, 157 L.Ed.2d 906 (2004).

¶ 5 We have carefully reviewed the record and have determined that it does support the factual findings of the trial court. See Notes of Testimony (N.T.), Suppression Hearing, 2/25/03, at 5–25. Our focus on review, therefore, shifts to the propriety of the legal conclusions which the trial court drew from those facts. *See Bomar, supra.*

¶ 6 Although the law of search and seizure is constantly evolving, its focus remains on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime. *See Terry v. State of Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Graham*, 554 Pa. 472, 721 A.2d 1075, 1078 (1998). Over one hundred years ago, the United States Supreme Court observed:

'No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.'

*Terry*, 392 U.S. at 9, 88 S.Ct. 1868 (quoting *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 35 L.Ed. 734 (1891)). In *Terry*, the Supreme Court recognized the importance of the competing governmental interests, in particular the safety of police officers:

*We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him.* Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.

*In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest.* When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the

power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Terry,* 392 U.S. at 23–24, 88 S.Ct. 1868 (footnote omitted) (emphasis added). Our Supreme Court has long recognized this interest as well. *See Commonwealth v. Hicks,* 434 Pa. 153, 158–159, 253 A.2d 276, 279 (1969) (adopting the *Terry* test and reasoning).

¶ 7 The value placed on individual liberty by our courts and our society remains unchanged to this day. However, over the past quarter-century, it is indisputable that there has been a change on the streets of our country. It is undeniable that many of our streets are infinitely more dangerous for citizens and police officers alike than they were in 1968 when the U.S. Supreme Court decided *Terry* and in 1969 when our Supreme Court decided *Hicks.* Mindful of this reality and the balance we must strike, we turn to our legal analysis.

■■■ ¶ 8 Our Supreme Court has outlined three types of interactions between police and citizens:

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. McClease,* 750 A.2d 320, 324 (Pa.Super.2000) (quoting *In the Interest of S.J.,* 551 Pa. 637, 713 A.2d 45, 47 n. 3 (1998)). The threshold inquiry in these cases is whether the citizen in question has been legally seized.

To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Strickler,* 563 Pa. 47, 58–59, 757 A.2d 884, 889–890 (2000) (citations omitted).

■■■ ¶ 9 Our initial inquiry is, therefore, whether Appellant was legally "seized" by Officer Krahe at the time he abandoned the cocaine. Appellant argues that at the time he threw the cocaine under the car, he became the subject of an investigative detention. We agree.

■■■ ¶ 10 The legal analysis of whether there has been a seizure during an encounter between police and a citizen is necessarily fact-specific. *Id.* Because the level of intrusion into a person's liberty may change during the course of the encounter, we must carefully scrutinize the record for any evidence of such changes. *Id.* at 58–60 and 72–73, 757 A.2d at 889–891 and 897–898.

¶ 11 The case cited by Appellant as "most closely analogous" is *Commonwealth v. McClease,* 750 A.2d at 320. (Appellant's Brief at 12). In that case, two police officers, on routine patrol in a high crime area, noticed the appellant sitting in

a vehicle. *Id.* at 322. McClease appeared to duck and act evasively when he, in turn, noticed the officers. *Id.* at 323. The officers approached and, when McClease looked as if he was going to get out of the vehicle, one of the officers ordered him to stay in the vehicle. *Id.* McClease then attempted to discard drugs under the car. *Id.* Our Court applied the two-pronged *Terry* test to those facts and found that the appellant was seized at the point the officer ordered him to stay in the car. *Id.* at 325. The Court further found that the officer lacked reasonable suspicion to seize the appellant in this manner. *Id.* at 326.

¶ 12 Instantly, we conclude that it was a "mere encounter" when Officer Krahe, responding to a report of a domestic dispute at 308 Murray Avenue and aware that domestic disputes are volatile, approached the vehicle parked directly in front of that address and spoke to the occupants. This "mere encounter" changed its nature and rose to the level of an "investigative detention" only after Appellant attempted to exit the vehicle and was ordered several times by Officer Krahe to remain therein. *See McClease, supra.*

 ¶ 13 Having determined that an investigative detention did exist at a point in time before Appellant discarded the cocaine, we must next decide whether Officer Krahe's seizure of Appellant was justified by reasonable suspicion.

Our "inquiry is a dual one—whether the officers' action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), *quoted in Commonwealth v. Hicks,* 434 Pa. 153, 158, 253 A.2d 276, 279 (1969). Regarding the stop, a police officer may, short of an arrest, conduct an investigative detention if he has a

reasonable suspicion, based upon specific and articulable facts, that criminality is afoot. *See Terry,* 392 U.S. at 21, 30, 88 S.Ct. at 1880, 1884; *Commonwealth v. Allen,* 555 Pa. 522, 527, 725 A.2d 737, 740 (1999). The fundamental inquiry is an objective one, namely, whether "the facts available to the officer at the moment of the [intrusion] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1880 (citations omitted). This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, *see United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability. *See Alabama v. White,* 496 U.S. 325, 330–31, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).

*Commonwealth v. Zhahir,* 561 Pa. 545, 552, 751 A.2d 1153, 1156–1157 (2000).

¶ 14 Appellant argues that the facts articulated by Officer Krahe at the suppression hearing in support of his suspicion that Appellant and his cohort may have been a threat to the officer's safety "amounted to no more than an 'educated hunch' and was [sic] not nearly sufficient to support the seizure of [Appellant]." (Appellant's Brief at 11). Appellant again relies primarily on *McClease, supra,* in support of his claim.

¶ 15 We reject Appellant's reliance as misplaced. While there is a superficial resemblance to the case *sub judice,* a careful and fact-specific analysis of the two cases reveals the crucial and dispositive discrepancies. First, Officer Krahe was alone, responding to a radio call of a domestic disturbance at the *exact* address in front of which Appellant was parked. The

two officers in *McClease* were simply on routine patrol together. *Id.* at 322–323. Second, Officer Krahe had prior experience at this *exact* address, with calls involving domestic violence, fighting and illegal drug activity. The officers in *McClease* had heard only generalized complaints about the area being a high crime area. *Id.* at 323. Third, Officer Krahe's experience with domestic disputes was that they were highly volatile, unpredictable and potentially dangerous. These experiences reasonably raised his safety concerns. The officers in *McClease* expressed no particular safety concerns. *Id.* at 322–323. Fourth, Officer Krahe articulated an additional, specific concern about his own safety. He was patrolling alone and, in order to investigate the domestic dispute call at 308 Murray Avenue, he would have had to turn his back on the two individuals sitting in the car parked directly in front of the residence. The officers in *McClease* were investigating together and did not have to turn their backs on that appellant to conduct their investigation. *Id.* Fifth, viewed objectively and collectively against the back-drop of the domestic dispute call concerning 308 Murray Avenue, the evasive actions of Appellant and his cohort, their repeated refusal to show their hands and Appellant's attempt to flee the car, all raised Officer Krahe's suspicions to the level where persons of reasonable caution would believe that they had to take steps to ensure their safety before they could turn their backs on those individuals and continue their investigation of the reported domestic dispute. Viewed objectively, the officers in *McClease* could not articulate facts amounting to reasonable suspicion justifying their seizure of the appellant. *Id.* at 326.

¶ 16 After a careful and thorough review of the fact-specific case law in this area, we agree with the trial court that the most instructive case in this matter is actually *Commonwealth v. Graham*, 554 Pa. 472, 721 A.2d 1075 (1998).

In *Commonwealth v. Graham*, [554 Pa. 472,] 721 A.2d 1075 (1998), the court applied the stop and frisk concept outlined in *Terry*, and adopted by the Pennsylvania Supreme Court in *Hicks*, to the following situation, which has similarities to the case before us. In *Graham*, the officer was on routine patrol when he noticed three men standing in a known high crime area. Recognizing all three individuals, he recalled that there was an outstanding arrest warrant for one of the three. When he yelled for them to stop, they complied. He directed the known fugitive to lie on the ground, but noticed that one of the other two had a large bulge in his pocket that the officer feared to be a weapon. In order to allay his fears, he conducted a pat-down search of the man. [*Id.* at 474–475, 477, 721 A.2d at 1076–1077.]

In concluding that the officer had conducted a lawful pat-down search for weapons, the court noted that the officer was alone, late at night, with three individuals. [*Id.* at 477, 721 A.2d at 1077.] In order to effectuate the arrest of the known criminal, the officer had to turn his back on the defendant. [*Id.*] At that point, the bulge in the defendant's pants pocket caused him to fear for his safety. [*Id.*] When the purpose of the search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, a limited search is permissible to discover the presence of weapons which may be used to endanger the safety of police or others. [*Id.* at 447, 721 A.2d at 1078, citing] *Adams v. Williams*, 407 U.S. 143, [92 S.Ct. 1921, 32 L.Ed.2d 612] . . . (1972). On these facts, the *Graham* court agreed that the officer reasonably suspected that the defendant may be

armed, and criminal activity was afoot, and therefore conducted a lawful pat-down for weapons. [*Id.*]

(Trial Court Opinion, March 14, 2003, at 3–4). In *Graham,* as in the instant case, the officer had specific knowledge of criminal activity at the location in question. Both officers were acting alone but were faced with more than one individual. *Id.* at 477, 721 A.2d at 1077. The appellant in *Graham* and Appellant herein both aroused reasonable fear in the respective officers that they might present a danger to the officer. *Id.* Both officers were forced to turn their backs on the respective appellants in order to perform their official duties. *Id.* Both of these officers were justified in taking the minimally intrusive action they took in order to ensure their safety.[5]

¶ 17 We agree with the trial court that the limited seizure of Appellant in this case was justified by Officer Krahe's reasonable suspicion that criminal activity was afoot at 308 Murray Avenue. Thus, the officer's minimally intrusive actions were an appropriate measure to ensure his safety so that he could continue his investigation into the reported domestic dispute. Under these circumstances, the cocaine abandoned by Appellant was not the fruit of an illegal detention and was properly admitted as evidence. Accordingly, we hold that the trial court properly denied Appellant's motion to suppress the evidence.

¶ 18 Judgment of sentence affirmed.

---

**5.** It is notable that Officer Krahe took less intrusive action than the officer in *Graham.* He did not touch Appellant; he merely re-quested that he remain in the car. N.T. Motion to Suppress, 2/25/03, at 21–22.