J-S31021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH MURPHY | : | |
| | : | |
| Appellant | : | No. 1973 EDA 2017 |

Appeal from the Judgment of Sentence May 19, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009094-2014

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 12, 2018**

Kenneth Murphy appeals from his judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after he was convicted of one count each of carrying a firearm without a license,[1] carrying a firearm on the streets of Philadelphia,[2] possessing an instrument of crime (PIC),[3] and two counts each of terroristic threats[4] and simple assault.[5]  After careful review, we affirm.

_____

[1] 18 Pa.C.S. § 6106.

[2] 18 Pa.C.S. § 6108.

[3] 18 Pa.C.S. § 907.

[4] 18 Pa.C.S. § 2706(a)(1).

[5] 18 Pa.C.S. § 2701(a).

Around 9:00 p.m. on July 22, 2014, Philadelphia Police Sergeant Juan Rivera was on routine patrol with his partner, Officer Michael Sidebotham. They responded to a police radio call regarding a person with a gun on the 6400 block of North 15th Street. Upon arrival at the location, the officers met two young males who told them that Murphy, who at that time was sitting on the patio of a nearby row home, had gotten into an altercation with them over a parking spot. The young males told Officer Sidebotham that Murphy had produced a firearm from a white towel and "said something to the effect that I'm about to move too." N.T. Suppression Hearing, 5/19/16, at 32. They also told Officer Sidebotham that Murphy had taken the towel and gun back into his house after the incident. *Id.* at 33.

At that point, Sergeant Rivera approached Murphy on the porch, identified himself as a police officer, and told Murphy that he had received a call for a person with a gun and he was trying to ascertain whether or not Murphy had been involved in the argument. Sergeant Rivera testified that Murphy was sweaty and seemed agitated with his questions. Murphy told the sergeant that he had been involved in a disturbance with his neighbors, however, he did not have a gun on him. *Id.* at 24. Murphy also told the sergeant that he was a retired Southeastern Pennsylvania Transit Authority (SEPTA) police officer. *Id.* at 10-11. When Sergeant Rivera asked Murphy for identification, Murphy told him he had some inside the house. *Id* at 11.

Sergeant Rivera informed Murphy that for his own safety he needed to go with Murphy inside the home to retrieve his identification. *Id.* at 11.

Sergeant Rivera testified that Murphy said, "no problem," unlocked the door and opened the door so they could enter the home. *Id.* at 11, 20. Sergeant Rivera accompanied Murphy to the upstairs, front bedroom of the row home where Murphy retrieved his identification from a dresser drawer; Officer Sidebotham remained in the downstairs living room of the residence. *Id.* at 12. Officer Sidebotham testified that as the men were going upstairs, Murphy "glanced toward the sofa to [Officer Sidebotham's] left." *Id.* at 33. Officer Sidebotham then observed a white towel in plain view sitting on the couch; once Sergeant Rivera and Murphy were upstairs, Officer Sidebotham retrieved the white towel. *Id.* at 34. The towel was wrapped around a loaded, black Smith & Wesson .38 revolver. *Id.* at 36. At that point, Officer Sidebotham told Sergeant Rivera to handcuff Murphy; Murphy was placed under arrest. *Id.* at 45-46.

On December 11, 2014, Murphy filed a pre-trial motion to suppress, alleging that the warrantless search of his residence and his arrest were illegal and that the gun seized from the search of his row house should be suppressed. On May 19, 2016, the trial court held a suppression hearing where Sergeant Rivera, Officer Sidebotham, and Murphy testified. The trial judge[6] denied Murphy's motion to suppress, making the following findings of fact and conclusions of law on the record:

---

[6] We note that the Honorable Giovanni Campbell presided over Murphy's suppression hearing, while the Honorable Glenn B. Bronson presided over Murphy's trial and sentencing.

The Commonwealth bears the burden by a preponderance of the evidence to prove that all police activity is lawful. I do find that both officer[s], Rivera and Officer Sidebotham[,] testified credibly in this case. I find that the defendant testified credibly for the most part, and that his testimony for the most part corroborates the material evidence of the Commonwealth.

I find that the situation began as a mere encounter and quickly became a situation that had ample reasonable suspicion to stop and frisk the defendant although he was not.

I do find that the defendant's con[sent] for the officers going to the home was voluntary and unequivocal and it is consistent with his – which to identify himself to officers as a retired SEPTA police officer. And I find he probably thought it would make this all go away.

I do not find that he was coerced into the residence.

I do find that [there were] ample bas[e]s to conduct a safety frisk of the home that would have included inspection and the discovery of the towel since it was identified as contraband. But we need not rely on that.

I do find that upon entering with consent and the defendant's glancing towards the sofa and then the officer seeing a white towel assuming what was described by the complainant did provide probable cause to recover it lawfully in the reviewing area.

This probable cause [is] established by a totality of the circumstances [that] are . . . not limited to[:] the radio call, the complainant's report immediately before the sitting [sic] of the towel[] by both officers[, t]he defendant's own conduct before going into the house, which included his evasive and . . . verbally aggressive behavior[,] the defendant's glancing toward the towel once they were all inside the home. The coincidental presence of the white towel on the couch immediately after the complaint that included a report of the defendant going back into the house with a white towel that contained a gun.

Therefore, the entry was lawful. The recovery is supported by probable cause and the motion to suppress is denied.

N.T. Suppression Hearing, 5/19/16, at 70-72. Following a one-day bench

trial, Murphy was convicted of the above-stated offenses; he was sentenced

on May 19, 2017, to an aggregate term of 6-23 months' incarceration, followed by a five-year probationary tail. Murphy filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Murphy raises the following two issues for our consideration:

(1) Was not [the] evidence (a gun) unconstitutionally seized during a warrantless search of [Murphy's] house where [Murphy] involuntarily consented to police entry into the house only because the officer said he would have to accompany [Murphy] into the house as [Murphy] was going to retrieve identification requested by the officer?

(2) As the gun seized from the house was not in plain view, did not the police need a warrant to open the white towel in order to ascertain whether a gun was secreted inside of the towel (notwithstanding the purported consent to enter)?

Appellant's Brief, at 3.[7]

Murphy argues he did not voluntarily consent to the officers entering his home to accompany him to retrieve identification from an upstairs bedroom. He also contends that even if the officers did lawfully enter his home, they needed a warrant to search the towel that secreted the gun because the gun was not in plain view. We disagree.

---

[7] When reviewing an order denying a motion to suppress evidence, we must determine whether the trial court's factual findings are supported by the evidence of record. If the evidence supports the trial court's findings, we are bound by them and may reverse only if the legal conclusions drawn therefrom are erroneous. **Commonwealth v. Blair**, 860 A.2d 567, 571 (Pa. Super. 2004).

"Both the United States and Pennsylvania Constitutions prohibit unreasonable searches and seizures." *Commonwealth v. Garibay*, 106 A.3d 136 (Pa. Super. 2013). "[A]s a general rule, a search warrant is required before police may conduct any search. Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." *Commonwealth v. Whitlock*, 69 A.3d 635, 637 (Pa. Super. 2013) (citations and quotation marks omitted). Voluntary consent is one such exception. *Commonwealth v. Kemp*, 961 A.2d 1247, 1260 (Pa. Super. 2008) (en banc). The voluntariness of consent is a question of fact that is determined by looking at the totality of the circumstances. *Commonwealth v. Edwards*, 735 A.2d 723, 725 (Pa. Super. 1999).

Instantly, the trial court found Sergeant Rivera and Officer Sidebotham credible. *Commonwealth v. Slaton*, 556 A.2d 1343, 1347 (Pa. Super. 1989) (credibility findings are within sole province of trial court and will not be disturbed on appeal). Based on a totality of the circumstances, the court concluded that Murphy was not coerced into his residence to retrieve his identification, but rather that he voluntarily and unequivocally consented to the officers entering his home. *Kemp*, *supra*. The record supports this conclusion where Murphy unlocked the door for the officers to enter the residence and testified that the officers did not show any signs of physical force when they asked him to retrieve his identification. N.T. Suppression Hearing, 5/19/16, at 50-51. Moreover, in order to ensure his safety, it was reasonable for Sergeant Rivera to accompany Murphy into his residence to

retrieve his identification. *See Commonwealth v. Johnson*, 68 A.3d 930 (Pa. Super. 2013) (law of search and seizure remains focused on delicate balance of protecting right of citizens to be free from unreasonable searches and seizures and protecting safety of citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime). Accordingly, we conclude that the police lawfully entered Murphy's home without a warrant.

With regard to the warrantless search of the white towel sitting on the couch in Murphy's home, the suppression judge determined that the item had been lawfully seized under the plain view exception to the warrant requirement. We agree.

The plain view doctrine provides that:

> [E]vidence in plain view of the police can be seized without a warrant. The plain view doctrine applies if: 1) police did not violate U.S. Const. amend. IV during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item.

*Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa. Super. 2012) (citations omitted). A police officer has probable cause to believe that an object is incriminating where "the facts available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or useful as evidence of a crime[.]" *Commonwealth v. McEnany*, 667 A.2d 1143, 1148 (Pa. Super. 1997). The

probable cause standard does not require the officer's belief to be "correct or more likely true than false." ***Id.***

Based on the young men's account that Murphy had just threatened them with a gun that was wrapped in a white towel and that Murphy had taken the towel and gun back inside his home right before the officers arrived at the scene, Officer Sidebotham had probable cause to believe that this white towel was the same white towel that contained contraband in the earlier altercation. Because:  (1) the officers were lawfully in Murphy's home; (2) the white towel was not obscured and could be seen plainly from where Officer Sidebotham was standing in the living room; (3) the incriminating nature of the item was readily apparent because he had just received information that Murphy had brandished a gun that was wrapped in a white towel; (4) and the officer had the lawful right to access the item, it was properly seized under the plain view doctrine. ***Anderson***, ***supra***.

Because the trial court's factual findings are supported by the evidence of record, ***Blair***, ***supra***, we conclude that the trial court properly denied Murphy's suppression motion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/12/18</u>