J-A27011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                 :                 PENNSYLVANIA
             Appellant        :
                                 :
                                 :
             v.                :
                                 :
                                 :
TYREUK BELLAMY            :     No. 215 EDA 2019

Appeal from the Order Entered January 3, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001640-2018

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BOWES, J.:              Filed: April 15, 2020

The Commonwealth appeals from the January 3, 2019 order granting Appellee Tyreuk Bellamy's pre-trial motion to suppress. We reverse and remand for further proceedings.

We summarize the uncontradicted factual and procedural background of this case as follows. On February 9, 2018, at 9:45 p.m., Officer Brian Canela and his partner, Dennis Lippert, were on patrol in full uniform in a marked police vehicle in a high crime area in Philadelphia. *See* N.T. Suppression Hearing, 1/3/19, at 7-8, 30-31. As they turned onto the 5900 block of Warrington Avenue, the officers observed four or five males gathered toward the end of the block. *Id*. The officers smelled burnt marijuana emanating from the group through their cracked windows and decided to move closer.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Eventually, they stopped their vehicle parallel to the group. As it was dark, Officer Lippert deployed the "flashlight on top of the vehicle" in order to better illuminate the group. *Id*. at 31. Officer Canela asked if the men were smoking and no one verbally responded to his question. However, Appellee quickly moved away from the group and made a motion like he was discarding something, before returning. *Id*. at 9, 31.

Officer Canela told his partner that he was going to "investigate." *Id*. at 9. He exited the vehicle and walked towards Appellee. *Id*. Appellee immediately began to walk away, and soon began running away, from the officer. *Id*. at 10. Officer Canela chased Appellee. *Id*. Officer Lippert exited the vehicle and joined in the pursuit, running parallel to Officer Canela, but in the street. *Id*. at 32. After approximately one-half block, Appellee attempted to cross the street and ran into a parked vehicle, which caused him to fall to the ground. *Id*. at 10, 33. The officers jumped on him and attempted to subdue him. *Id*. at 10-11, 33. However, Appellee refused to comply with their commands. Instead, Appellee kept moving his hands under his body and was "throwing elbows." *Id*. During the struggle, Officer Canela observed Appellee pull a gun out of his pocket and attempt to secrete it between his thighs. *Id*. at 11. Officer Canela immediately yelled "gun." *Id*. While Officer Lippert did not see Appellee remove the gun from his pocket, he heard Officer Canela yell "gun" and saw him retrieve the weapon from Appellee's waistband area. *Id*. at 34. Once Officer Canela recovered the weapon, Appellee stopped

resisting the officers and Officer Lippert was able to place him in handcuffs. *Id*. Appellee did not have a license to carry a firearm. *Id*. at 12.

Appellee was arrested and charged with possessing a firearm with an obliterated serial number, carrying a firearm without a license, and carrying a firearm on the public streets in Philadelphia. After all of the charges were held for court at the preliminary hearing, Appellee filed an omnibus pre-trial motion to suppress the gun. Specifically, Appellee challenged the constitutionality of the alleged initial investigative detention and his actual arrest, arguing that the Commonwealth did not have reasonable suspicion to approach, follow, or frisk him.

The court held a suppression hearing, during which Officers Canela and Lippert both testified. Appellee did not present any evidence. At the conclusion of the hearing, the court credited the officers' testimony before granting Appellee's suppression motion based upon the following legal conclusions: (1) a seizure occurred when Officer Canela exited his vehicle and started walking towards Appellee; (2) the police lacked the necessary reasonable suspicion to conduct an investigative detention at that point because they did not see any marijuana; and (3) Appellee's flight from the police was provoked by Officer Canela's approach. *Id*. at 61-63.

The Commonwealth filed a timely notice of appeal, pursuant to Pa.R.A.P. 311(d), in which it certified that the court's order terminated or substantially handicapped the prosecution. *See* Pa.R.A.P. 904(e). The Commonwealth and the court both complied with Pa.R.A.P. 1925.

- 3 -

The Commonwealth raises the following issue for our review:

Whether the lower court erred in suppressing [Appellee's] gun where officers of the Mobile Field Force Unit patrolling in a high crime area smelled burning marijuana apparently emanating from a group of men including [Appellee]; where [Appellee] walked away, made a discarding motion, and returned to the group; where [Appellee] ran away unprovoked after one of the officers approached and inquired of the group whether they were smoking; and where, after the officer apprehended [Appellee], they found a gun where he was attempting to secrete it between his legs?

Commonwealth's brief at 4.

We begin by noting our well-settled standard of review.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Miller*, 56 A.3d 1276, 1278–1279 (Pa.Super. 2012) (citations omitted).

Article I, section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution protect people from unreasonable searches and seizures. *Commonwealth v. Smith*, 836 A.2d 5, 10 (Pa. 2003) (citation omitted). There are three levels of interaction between citizens and police officers that guide our analysis when considering the constitutionality of a stop and seizure: (1) a mere encounter, (2) an

investigative detention, and (3) a custodial detention. ***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa.Super. 2005). More specifically:

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

***Commonwealth v. Coleman***, 19 A.3d 1111, 1115-17 (Pa.Super. 2011).

> Importantly, in order
>
> [t]o determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved. To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

***Commonwealth v. Reppert***, 814 A.2d 1196, 1201–1202 (Pa.Super. 2002) (citations omitted). When determining whether an interaction has escalated from a mere encounter to an investigatory detention, we consider, but are not limited to, the following factors: the number of officers present during the

interaction; whether the officer informs the citizen he or she is suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. *See Commonwealth v. Beasley*, 761 A.2d 621, 624–625 (Pa.Super. 2000). Notably, "[our Supreme] Court and the United States Supreme Court have repeatedly held [that] a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification." *Commonwealth v. Lyles*, 97A.3d 298, 302-03 (Pa. 2014).

The first question of law before us is whether the initial interaction between the officers and Appellee amounted to a mere encounter or an investigative detention. At the suppression hearing, the trial court held that an investigative detention was initiated from the moment Officer Canela exited his patrol vehicle. *See* N.T. Suppression Hearing, 1/3/19, at 61-63. In its brief, the Commonwealth counters that the officer's initial approach was a

mere encounter.  **See** Commonwealth's brief at 10-11.  We agree with the Commonwealth.[1]

The officers were clearly identifiable as police officers, present in a high crime area, and outnumbered by Appellee's group.  Officer Lippert deployed his flashlight because it was dark outside and Officer Canela asked the group if anyone was smoking.  No questions were directed at Appellee individually and neither officer indicated to the group that anyone was suspected of criminal activity.[2]  As Officer Canela exited his vehicle and started to approach Appellee, he did not draw his weapon, make any demonstration of force, or

_____

[1] In its opinion, the trial court altered its reasoning for why the gun must be suppressed, stating that the initial interaction was a mere encounter which transitioned into an investigative detention when the officers chased and detained Appellee.  Trial Court Opinion, 3/15/19, at 6.  Nonetheless, the court continued to base its finding of insufficient reasonable suspicion solely upon behavior that occurred prior to the officers exiting the vehicle.  Thus, because it is unclear whether the trial court truly changed its position in its opinion, we consider the issue of when the investigative detention began here.

[2] Appellee argues that we should consider the fact that Officer Canela testified that he told his partner as he was exiting the vehicle that he was going to conduct an "investigation" in our analysis here.  Appellee's brief at 9.  Appellee explains that this statement shows that an investigative detention was initiated when the officer exited the vehicle, because we must view the evidence in the light most favorable to Appellee.  **Id**.  However, the record does not indicate that Appellee heard Officer Canela's remark.  Without evidence that Appellee heard the remark, it is not relevant to our analysis.  An officer's subjective view of an interaction does not impact the objective circumstances of whether a suspect feels free to leave unless, and until, that intent is communicated to the suspect.  **See**, **e.g. Stansbury v. California**, 511 U.S. 318, 323 (1994) (reiterating that a police officer's subjective view that an individual under questioning is a suspect, if undisclosed, does not bear upon the question of whether the individual is in custody for purposes of **Miranda**.).  Accordingly, Appellee's argument has no merit.

- 7 -

utter any commands. When viewed objectively, this was a mere encounter. Accordingly, the suppression court erred when it found that this interaction amounted to an investigative detention.

However, because the interaction did not end here, neither does our inquiry. *See Commonwealth v. Blair*, 860 A.2d 567, 572 (Pa.Super. 2004) ("[T]he level of intrusion into a person's liberty may change during the course of the encounter[.]"). The Commonwealth contends that the interaction escalated into an investigative detention when Appellee engaged in a suspicious discarding motion, the officer approached him, and then he fled. We agree with its assessment that the nature of the interaction escalated to an investigative detention at this point. Therefore, the second question of law before us is whether the officers had the reasonable suspicion necessary to chase and detain Appellee once he fled.

In order to determine whether the police officers had a reasonable suspicion to conduct an investigative detention, we consider the totality of the circumstances. *See*, *e.g.*, *United States v. Cortez*, 449 U.S. 411, 417 (1981). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id*. at 417–18. In our assessment, we give weight to officer training and experience. *Commonwealth v. Davis*, 102 A.3d 996, 1000 (Pa.Super. 2014). Importantly, our Supreme Court has held that unprovoked flight alone does not create reasonable suspicion, but in

combination with other factors, it may demonstrate that criminal activity is afoot. *In re D.M.*, 781 A.2d 1101 (Pa. 2001).

Here, the suppression court held that the officers did not have reasonable suspicion to detain Appellee. In its opinion, the suppression court rested its decision on the "critical" grounds that Appellee's flight was provoked. *See* Trial Court Opinion, 3/15/19, at 5. It reasoned that because Appellee did not begin to run until he saw Officer Canela approaching, his flight was provoked. Thus, Appellee's flight was not relevant to the investigative detention analysis and, without it, the Commonwealth could not meet the reasonable suspicion threshold. The Commonwealth disagrees and counters that the suppression court's incorrect view regarding the nature of Appellee's flight stems from its erroneous conclusion that an investigative detention had already ensued when Appellee decided to flee. *See* Commonwealth's brief at 15. The Commonwealth contends that when the approach is viewed as a mere encounter, Appellee's flight was unprovoked. Regardless, the Commonwealth argues that Appellee's flight should be considered as one of the factors, which, when combined with the other circumstances, gave the officers the necessary reasonable suspicion to justify the investigative detention of Appellee. *Id*. Again, our precedent compels us to agree with the Commonwealth.

In Pennsylvania, we have repeatedly considered flight from a mere encounter to be unprovoked. *See In re D.M.*, *supra*; *Commonwealth v.*

*Walls*, 53 A.3d 889 (Pa.Super. 2012). Under our jurisprudence, an appellant's headlong flight from a high crime area upon a mere encounter is considered suspicious and a relevant factor in the reasonable suspicion analysis. *Id*. Moreover, we have not distinguished between "provoked" and "unprovoked" flight and find the creation of such a distinction unnecessary here. *Id*.

For example, in *D.M.*, a police officer responded to the corner of 28th Street and Cecil B. Moore Avenue in Philadelphia after receiving an anonymous tip that an individual on that corner had a gun. *D.M.*, *supra* at 1162. The caller identified the gun possessor as a black male, wearing a white t-shirt, blue jeans, and white sneakers. Appellant matched the description given by the tipster. *Id*. Accordingly, the officer exited his vehicle and told the appellant "to come over." *Id*. Instead, the appellant ran. *Id*. Eventually, backup arrived and cornered the appellant. *Id*. A subsequent pat down yielded a .32 caliber handgun. *Id*. Our Supreme Court determined that the officer had the reasonable suspicion necessary to detain the appellant. *Id*. at 1164–65. The Court relied, in part, on the United States Supreme Court's decision in *Illinois v. Wardlow*, 528 U.S. 119 (2000), concluding that "unprovoked flight could be considered among the relevant contextual considerations, since 'nervous, evasive behavior is a pertinent factor in determining reasonable suspicion' and 'headlong flight—whenever it occurs— is the consummate act of evasion.'" *D.M.*, *supra* at 1164 (citing *Wardlow*,

*supra* at 124). Importantly, the court did not define "unprovoked flight" or attempt to distinguish it from "provoked flight." Instead, it merely considered the fact that the appellant fled as one of many factors giving rise to reasonable suspicion for the detention.

Similarly, in *Walls*, a police officer received information over his radio that a black male wearing a black coat and black jeans was observed at an intersection carrying a gun. A half-block away, the officer spotted someone matching the description and attempted to stop the person. However, after seeing the officer, the individual fled. *Walls*, *supra* at 894. Relying upon *D.M.* and *Wardlow*, we concluded that the suspect's "unprovoked flight," combined with his close proximity to the subject location and matching characteristics to the description of the suspect, gave "rise to reasonable suspicion that criminal activity was afoot." *Id*. at 894. Again, we did not define "unprovoked flight" or attempt to distinguish it from "provoked flight."

The framework utilized by *D.M.* and *Walls* is highly instructive here. As recited earlier, the officers were on patrol as members of a special taskforce trained in narcotics investigations and targeting high-crime areas. The officers, based on their experience, recognized the smell of burnt marijuana emanating from Appellee's group. They approached and asked if anyone was smoking, but got no response other than Appellee's suspicious movement. As a result, Officer Canela decided to exit the vehicle and approach Appellee. He made no show of force and was clearly identifiable as a police officer.

However, before he could reach Appellee or ask him any questions, Appellee fled. As the officers struggled to detain him, Appellee made furtive movements, including the attempt to conceal the firearm, which they then recovered.

Given the totality of the circumstances, and consistent with the holdings in *D.M.* and *Walls*, we find that the officers possessed the requisite reasonable suspicion to stop Appellant after he fled from the sidewalk. Accordingly, the suppression court erred when it concluded that the Commonwealth had not met its burden and suppressed the gun. Therefore, we reverse the Superior Court's order granting suppression of the gun, and remand for further proceedings consistent with this memorandum.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/15/20