J-A13024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ISRAEL FLORES | : | |
| | : | |
| Appellant | : | No. 2421 EDA 2017 |

Appeal from the Judgment of Sentence July 7, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005835-2016

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 19, 2020**

Israel Flores appeals from the trial court's judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after he was found guilty of carrying a firearm without a license[1] and carrying a firearm on the streets of Philadelphia following a stipulated waiver trial.[2]  On appeal, Flores contests the validity of a traffic stop and the warrantless search of his vehicle during which the police found an illegal firearm.  After careful review, we affirm.

On May 13, 2016, Detective Lawrence Henry of the Philadelphia Homeland Security Task Force was conducting surveillance in an unmarked

---

[*] Retired Senior Judge assigned to the Superior Court.
[1] 18 Pa.C.S. § 6106 (A)(1).

[2] 18 Pa.C.S. § 6108.

police car at the Roosevelt Inn (the Inn), located in the 3600 block of Roosevelt Boulevard in North Philadelphia. The Inn was known to be used for prostitution and as a home base for drug trafficking. The prior day, a confidential informant (CI) told Detective Henry that Phillippe Mendoza (Mendoza) was using the Inn as "a base to distribute money, distribute narcotics," which was part of a money laundering scheme in connection with his role in a drug trafficking organization. N.T. Suppression Hearing, 5/2/17, at 26. Detective Henry set up surveillance at the Inn on May 12, 2016, which continued throughout the following day, when the CI provided additional information about Mendoza's "comings and goings." *Id.* at 20. Specifically, the CI told the detective that Mendoza would use the Inn "to move about," which meant that he would leave the Inn to make "structur[ed] deposits of narcotic proceeds into area banks in and around Philadelphia" and then return to the Inn. *Id.* at 18, 21.

The following day, on May 13, Detective Henry observed a Black Mazda CX-5, rented and driven by Flores, pull up to the side of the Inn. He saw Mendoza exit the Inn and get into the back of the car. Detective Henry followed the Mazda as it headed southbound on Roosevelt Boulevard. As Detective Henry stopped the Mazda on the 6000 block of Roosevelt Boulevard, he radioed for backup officers, which included Officer Matthew Lally of the

Philadelphia Highway Patrol.[3] Detective Henry testified that the occupants of the vehicle were not free to leave when he stopped the car because he "had to stop the vehicle in order to interview [Mendoza,] the target of [his] investigation." *Id.* at 34.

Officer Lally observed, in plain view, Mendoza's passport, drug paraphernalia, and United States currency in the back pocket of the front passenger seat of the vehicle, directly in front of where Mendoza was sitting. On the seat next to Mendoza, also in plain view, was a black backpack; the backpack contained narcotics packaging and more United States currency. A black Armani satchel was also recovered on the backseat floor of the vehicle next to Mendoza; it contained a loaded silver .380-caliber Bersa handgun (serial number 502826), with an eight-round magazine and one live round in the chamber. The satchel also contained various documents with Flores' name on them. When the officers recovered the handgun, Flores voluntarily told them that it was his firearm and that "he had bought it from a family friend off the street to use for protection for his shop." *Id.* at 44. At that point, Officer Lally asked Flores if he had a valid permit to carry the gun, to which he responded, "no." *Id.* at 41. The officer then ran Flores' information

---

[3] Officer Lally's partner was also with him when he responded to Detective Henry's call for backup. N.T. Suppression Hearing, 5/2/17, at 37. Additional officers from two other districts also responded to Detective Henry's call. *Id.*

through the National Crime Information Center (NCIC) database which confirmed that he did not have a permit or license to carry the handgun. ***Id.***

On April 27, 2017, Flores filed motions to compel the identity of the CI and to suppress any non-***Mirandized***[4] incriminating statements he made to the police, as well as any physical evidence found as a result of the allegedly unlawful search of his vehicle and person. On May 2, 2017, the court held a hearing on the motions, after which it denied both motions. The court, however, noted that Flores' statement that he did not have a license or permit to carry the handgun, elicited by Officer Lally, was not admissible at trial where he was not first administered his ***Miranda*** rights.[5] On May 3, 2017, the court held a stipulated waiver trial, after which Flores was found guilty of the above-stated crimes. On July 7, 2017, the court sentenced Flores to two concurrent terms of five years' probation. Flores filed a timely notice of appeal and court-

---

[4] ***See Miranda v. Arizona***, 384 U.S. 436 (1966).

[5] ***See*** N.T. Suppression Hearing, 5/2/17, at 60 ("As to the subsequent response to the officer, however, as to whether or not he had a permit, that statement is out, because there's a question without preceding information with respect to ***Miranda***, however, there was no permit to carry that firearm."). However, at the stipulated trial, the Commonwealth presented evidence of Flores' lack of a license to carry the gun. N.T. Stipulated Waiver Trial, 5/3/17, at 15 (entering Commonwealth's "Exhibit C-3," certificate of nonlicensure from Pennsylvania State Police indicating defendant did not have license to carry firearm on streets of Philadelphia). Flores stipulated to this fact. ***Id.***

ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[6] Flores presents the following issue for our review:

"[Whether] . . . [incriminating evidence found during] a non-consensual, warrantless search of [a] vehicle . . . should be suppressed . . . [where p]rior to surrounding the vehicle with uniformed officers in marked vehicles[, the officers have] no arrest warrant for the [occupants], there is no contention that any section of the [M]otor [V]hicle [C]ode was violated, there is no reasonable suspicion or probable cause to believe any occupant of the vehicle had committed a crime in their presence[,] and there is no probable cause [] or reasonable suspicion to search the vehicle."

Appellant's Brief, at 8 (edited and reorganized for clarity).[7]

When reviewing an order denying a motion to suppress evidence, we must determine whether the trial court's factual findings are supported by the evidence of record. If the evidence supports the trial court's findings, we are bound by them and may reverse only if the legal conclusions drawn therefrom are erroneous. *Commonwealth v. Blair*, 860 A.2d 567, 571 (Pa. Super. 2004).

_____

[6] In his Rule 1925(b) statement, Flores raised the following issues: (1) the trial court erred in denying the motion to suppress; and (2) the trial court erred in denying the motion to compel the production of the confidential informant. Appellant's Pa.R.A.P. 1925(b) Statement, at 8/16/17, at 2. He does not argue the issue regarding disclosure of the CI's identity in his brief. Thus, we find he has abandoned the issue on appeal.

[7] The Commonwealth's counter-statement of the question presented is much more concise: "Did the trial court correctly deny defendant's motion to suppress the gun found in a satchel in the car he was driving where police officers had reasonable suspicion to stop the vehicle and contraband in plain view gave them probable cause to search it and the containers therein?" Appellee's Brief, at 1.

Flores contends that Detective Henry was not permitted to detain him to simply interview Mendoza, an occupant of his vehicle, where the record is silent with regard to how the CI knew about Mendoza's alleged involvement in money laundering, the CI provided no predictive information, and the police did nothing to develop the information that the CI knew. Moreover, he asserts that any physical evidence or statements he made to the police were the result of an illegal detention and should be suppressed.

The forcible stop of a vehicle constitutes an investigative detention such that there must be reasonable suspicion that illegal activity is occurring. ***Commonwealth v. Cruz***, 21 A.3d 1247, 1250 (Pa. Super. 2011). In ***Commonwealth v. Barber***, 889 A.2d 587 (Pa. Super. 2005), our Court explained exactly what is required to constitute reasonable suspicion for automobile stops based on information from a third-party tipster:

> Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances- the whole picture,' that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were reliable.

> When the underlying source of the officer's information is an anonymous call, the tip should be treated with particular suspicion. **However, a tip from an informer known to the police may carry enough indicia or reliability for the police to conduct an investigatory stop, even though the same tip from an anonymous informant would likely not have done so.**

Indeed, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk. **When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances. The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis.**

*Id.* at 593-94 (quotations, quotation marks, and citations omitted) (emphasis added).

Instantly, the trial judge made the following findings of fact and conclusions of law following the suppression hearing:

Thank you. I'm denying your motions.

Number 1, [the] Commonwealth has established at the very least, reasonable suspicion to stop the vehicle containing Mr. Mendoza.

The information provided by the [CI] was deemed to be reliable, based upon prior information received and corroborated by subsequent seizures as testified to by the detective. It was a good reason to stop that vehicle.

In terms of the vehicle itself, once that officer observed narcotic [paraphernalia] in plain view, there was indeed probable cause at the very least, at that point, to stop and seize.

In terms of the — and this is further corroborated by further information with respect to Mr. Mendoza. Yes, Mr. Flores was not related to this detective, but clearly it was corroborated [], as well.

With respect to statements made by this defendant that that gun is mine and I used it for my shop, that's in, because there were no pr[e]ce[]ding questions before his statement.

As to the subsequent response to the officer, however, as to whether or not he had a permit, that statement is out, because there's a question without preceding information with respect to *Miranda*, however, there was no permit to carry that firearm.

I note the circumstances surrounding this whole event included the circumstances as related to Roosevelt Inn, unfortunately.

The Court is quite familiar with the Roosevelt Inn, and [o]n numerous occasions where that location has been brought to the attention of the Court for narcotics activity; all kinds of criminal activity coming out of that place.

With respect to the motion to produce the [CI], I have heard nothing that would []tip the balance with respect to the confidential nature of that informant and the respective safety concerns that would result from revealing the identity of the informant or source, and I'm denying that request, as well.

So, feel free to supplement information as translated. I find that the detective and the officer testified credibly and incorporated findings of facts in there [sic] testimony thereto, to support the conclusions that I have made.

N.T. Suppression Hearing, 5/2/17, at 59-61. Our review of the record supports the trial court's factual findings and legal conclusions.

As a member of the Homeland Security Task Force, Detective Henry testified at the suppression hearing that he investigates drug trafficking and money laundering organizations. *Id.* at 9. He testified that in this case he had received information from a reliable CI that Mendoza was operating a money laundering scheme out of the Inn. *Id.* at 10. The CI had given him a description of Mendoza's activities, specifically regarding "his movements [and h]is comings and goings." *Id.* at 20. Detective Henry further testified that he had received reliable information from this same CI in more than ten prior investigations, which resulted in money and drug seizures, and, ultimately,

arrests.  *Id.* at 10-11, 21-22.  Detective Henry personally observed Mendoza exit the Inn and get into Flores' vehicle on the second day of his surveillance. Detective Henry followed the vehicle, which was heading southbound on Roosevelt Boulevard, to further investigate.

After stopping the vehicle on the 6000 block of Roosevelt Boulevard, Detective Henry approached the passenger side where Mendoza was seated in the back.  *Id.* at 23.  He asked Mendoza to exit the vehicle and conducted a pat-down of him.  *Id.*  at 33.  At that time, a backup officer, Officer Lally approached the rear passenger side of the car and observed, in plain view in the back pocket of the passenger seat, Mendoza's passport, drug paraphernalia and U.S. currency.  *Id.* at 40-41.  Officer Lally also observed a black backpack and black Armani satchel from the back seat and floor of the vehicle respectively.  *Id.*  The satchel contained a loaded handgun and several documents with Flores' name on them.  *Id.*  Flores told Officer Lally that he owned the handgun and that he uses it at his shop.  *Id.*  Flores did not have a valid permit or license to carry the gun.  *Id.* at 40-41.

Under these circumstances, we find that Detective Henry had reasonable suspicion to stop Flores' vehicle and conduct an investigatory detention based on suspected money laundering and drug activity being conducted by Mendoza, an occupant of the vehicle.  ***See Commonwealth v. Ranson***, 103 A.3d 73, 78-79 (Pa. Super. 2014) (information provided by CI can help establish reasonable suspicion for investigative detention).   While Detective Henry talked to Mendoza, Officer Lally observed drug paraphernalia

in plain view in the back pocket of the vehicle's passenger seat —immediately in front of where Mendoza had been seated when the car was stopped. At that point, the officers had probable cause to search the vehicle, including the satchel on the backseat floor of the car that contained the handgun. ***Commonwealth v. Brown***, 23 A.3d 544, 552 (Pa. Super. 2011) (plain view doctrine permits warrantless seizure of item when police observe object from lawful vantage-point; incriminating character of object immediately apparent; and officer has lawful right of access to object); ***see also Commonwealth v. Runyan***, 160 A.3d 81 (Pa. Super. 2017) (warrantless search of appellant's purse, which could conceal contraband, justified where officers had probable cause to believe vehicle contained contraband after finding baggie of marijuana on back seat passenger side floor in plain view).

Moreover, because Flores voluntarily told the officers that he owned the gun his statement was not illegally obtained in violation of ***Miranda***. ***See Commonwealth v. Page***, 59 A.3d 1118 (Pa. Super. 2013) (when defendant gives statement without police interrogation, statement deemed voluntary and not subject to suppression). Finally, the Commonwealth verified that Flores did not have a permit or license to carry the gun; Flores stipulated to that fact at trial.[8]

---

[8] We are aware of the Pennsylvania Supreme Court's recent case, ***Commonwealth v. Hicks***, 208 A.3d 916 (Pa. 2019), that held there "is no justification for the conclusion that the mere possession of a firearm, where it lawfully may be carried, is alone suggestive of criminal activity," because

- 10 -

Accordingly, we conclude that the trial court properly denied the suppression motion where its factual findings are supported by the evidence of record and its legal conclusions drawn are not erroneous. **Blair**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/19/2020

---

carrying a firearm is not an inherently illegal activity in Pennsylvania. **Id.** at 937. Unlike **Hicks**, the instant case involved more than an officer stopping an individual solely on the basis of report that that individual had been observed carrying a firearm on his person. Rather, here the officers already had probable cause to search the vehicle based on their observation, in plain view, of contraband. Once the officers were lawfully able to search the car without a warrant, they inevitably would have discovered that Flores had neither a permit nor license to carry the handgun. Finally, the fact that Flores did not have a license to carry the gun on the streets of Philadelphia was confirmed on the scene by an NCIC search, and Flores stipulated to that fact at trial. **See** N.T. Stipulated Waiver Trial, 5/3/17, at 15.

- 11 -